UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESMERALDA VASQUEZ**,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES CAPITOL POLICE**,<br><br>Defendant. | Civil Action No. 24-cv-248 (TSC) |

**MEMORANDUM OPINION**

Plaintiff Esmeralda Vasquez brings this suit against United States Capitol Police ("USCP"), alleging discrimination and a hostile work environment based on race, color, and national origin under the Congressional Accountability Act ("CAA"), 2 U.S.C. §§ 1302(a), 1311(a). USCP moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. to Dismiss at 9, ECF No. 9 ("Def.'s MTD"). For the reasons set forth below, the court will GRANT in part and DENY in part Defendant's motion.

**I.    BACKGROUND**

USCP trains new classes of prospective officers, "recruits," in the USCP Academy. *See* Compl. ¶ 6, ECF No. 1. Vasquez, a Hispanic female, enrolled in the Academy in November 2021 but did not graduate. *Id.* ¶ 4. She then re-enrolled in October 2022. *Id.* ¶ 7. Her Academy class included five Black recruits, one Asian recruit, four Hispanic recruits, and fourteen White recruits—twenty-four in total. *Id.* ¶ 8. Vasquez and her class participated in training activities, such as "drills, classroom legal and policy instruction, physical tactics, fitness examinations, and simulated scripted scenarios." *Id.* ¶¶ 6–8. USCP supervisors oversaw the training activities and

evaluated the recruits' performance.  *Id.* ¶ 6.  Instructor Diane Salen and Lieutenant Judy Arena, both White women, supervised Vasquez.  *Id.*  Vasquez alleges that Salen and Arena created a hostile work environment and discriminated against her based on her "Race (Hispanic), Color (Light Brown), and National Origin (Salvadorian Ancestry)."  *Id.* ¶¶ 23, 32.  She identifies the following specific incidents:

1. In December 2022, Salen "reprimanded" Vasquez for talking in the hallway with two other recruits—one Hispanic and one White.  *Id.* ¶ 9.  Salen yelled "Vasquez! You cannot do that! What you are doing is completely unacceptable!" *Id.*  Salen reprimanded the other Hispanic recruit but did not reprimand the White recruit.  *Id.*

2. On January 13, 2023, Salen interrogated Vasquez for approximately three hours regarding Vasquez's alleged cheating during a training activity.  *Id.* ¶ 10.  Salen also "implied that [] Vasquez engaged in sexual activities with U.S. Capitol Police instructors." *Id.*  During the interrogation, Vasquez informed Salen that she transcribed notes from fellow recruits for missed lectures in a notebook.  *Id.* ¶ 11.  Salen "prompted" Vasquez to produce the notebook.  *Id.*  During this interaction, Vasquez alleges that Salen "reached for [her] backpack," "snatched the notebook from [her] hands," and "violate[d] [her] personal space." *Id.*  Salen copied each page of the notebook, reminded Vasquez of the honor pledge, and warned that she could be fired from the Academy.  *Id.*

3. On January 15, 2023, Vasquez's "White classmates" informed her that Salen "also questioned them regarding the checklist in Vasquez's notes," but did not require them to produce notebooks or personal property and the questioning was "cordial and professional." *Id.* ¶ 12.

4. In "mid-to-late January," Salen "stared intensely" at Vasquez during an examination. *Id.* ¶ 14.  When Vasquez passed the examination, Salen "became visibly upset and immediately left the room." *Id.*

5. On February 3, 2023, Salen watched Vasquez during a "handcuffing training activity," which caused Salen "extreme anxiety" and caused her to make a mistake.  *Id.* ¶ 15.

6. On February 6, 2023, Salen interrogated Vasquez again regarding cheating during a January 2023 training scenario.  *Id.* ¶ 16.  Arena was also present.  *Id.*  Vasquez repeatedly denied cheating, but Salen and Arena "forced" her to write a confession stating that she "subconsciously used" information from classmates to cheat.  *Id.* ¶ 16; *see generally* Def.'s MTD Ex. 2, ECF No, 9-3.  The interrogation lasted "more than three hours," during which time Vasquez was not allowed to leave.  Compl. ¶ 17.

7. On February 8, two days after Salen and Arena "forced" Vasquez to write the confession, USCP dismissed her from the Academy for misconduct and cheating. *Id.* ¶¶ 18, 23–24.

Vasquez alleges that she "exhausted all administrative remedies prior to filing suit." *Id.* ¶ 2. She "filed a written discrimination complaint" with the USCP's Office of Professional Responsibility ("OPR") on February 8, 2023, Pl.'s Opp'n. to Def.'s MTD Ex. A, ECF No. 14-1 ("Opp'n"), but did not file a complaint with the Office of Congressional Workplace Rights ("OCWR") until August 3, 2023, Def.'s MTD Ex. 4, ECF No. 9-5. Vasquez's OCWR Complaint alleged discrimination and harassment based on race, color, sex, and age. *Id.* at 5. On October 31, 2023, an OCWR Preliminary Hearing Officer dismissed Vasquez's complaint as untimely and "for failure to state a claim." Def.'s MTD Ex. 5 at 13–17, ECF No. 9-6. On January 26, 2024, she filed this Complaint. ECF No. 1. USCP now moves to dismiss for lack of subject matter jurisdiction and failure to state a claim. ECF No. 9.

## II. LEGAL STANDARD

USCP first moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction. *See Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004). The law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Turner v. Bank of North Am.*, 4 U.S. 8, 11 (1951)). When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). "[T]he court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012)

(quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  The court may also consider documents "incorporate[ed] by reference" and "integral to [] plaintiff's claim." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (citing *Kaempe v. Meyers*, 367 F.3d 958, 965 (D.C. Cir. 2004)).  In an employment discrimination case, the court takes judicial notice of plaintiff's administrative complaint and the agency's final decision on that complaint. *Tyson v. Brennan*, 277 F. Supp. 3d 28, 34 (D.D.C. 2017).

Alternatively, USCP moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  A motion under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To survive, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The court "may consider not only the facts alleged in the complaint but also documents attached to or incorporated by reference in the complaint." *Demissie v. Starbucks Corp. Off. & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014).

### III.   ANALYSIS

#### A. Vasquez's National Origin Claims

USCP moves to dismiss Vasquez's national origin claims for failure to exhaust.  Def.'s MTD at 1.  Vasquez agrees that she did not exhaust and abandons those claims in her Opposition. Opp'n at 1.  Accordingly, the court will treat as conceded and dismiss Vasquez's national origin claims.  *See, e.g.*, *Davis v. Transp. Sec. Admin.*, 264 F. Supp. 3d 6, 10 (D.D.C 2017) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments . . . a

court may treat those arguments that the plaintiff failed to address as conceded." (quoting *Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, 268 F. Supp. 3d 61, 72 (D.D.C. 2017))).

B. **Subject Matter Jurisdiction**

The CAA extends Title VII's protections to covered employees of the federal legislative branch, including USCP employees. *Breiterman v. U.S. Capitol Police*, 15 F.4th 1166, 1172 (D.C. Cir. 2021) (citing 2 U.S.C. §§ 1301(a)(3)(D), 1302(a)(2)). Although "the CAA incorporates much of Title VII's substantive law," "it establishes its own comprehensive administrative regime—including jurisdictional provisions." *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 706 (D.C. Cir. 2009). The CAA confers jurisdiction in the federal district courts "over any civil action commenced" in accordance with certain statutory requirements. 2 U.S.C. § 1408(a). Before filing suit in federal court, a covered employee must file a formal claim with OCWR, *see id.* § 1301(a)(12) (Definitions), within 180 days of "the date of the alleged violation," *id.* § 1402(d). The claim "shall" (1) "be made in writing under oath or affirmation," (2) "describe the facts that form the basis of the claim and the violation that is being alleged," (3) "identify the employing office alleged to have committed the violation or in which the violation is alleged to have occurred," and (4) "be in such form as [OCWR] requires." *Id.* § 1402(a)(2). "Only a covered employee who has filed a claim timely" with OCWR "and who has not submitted a request for a [OCWR] hearing" may "file a civil action" in federal district court "with respect to the violation alleged in the claim[.]" *Id.* § 1401(b)(1).

In *Blackmon-Malloy v. U.S. Capitol Police Board*, the D.C. Circuit held that the CAA's administrative exhaustion requirements—specifically, that an employee must timely request counseling and mediation—were jurisdictional limitations, such that failure to administratively

exhaust deprived the court of subject matter jurisdiction. 575 F.3d at 713–14. Congress subsequently eliminated the counseling and mediation requirements from the CAA's jurisdictional grant, 2 U.S.C. § 1408(a), but retained the cross-reference to the requirement that a covered employee timely file an OCWR claim. Congressional Accountability Act of 1995 Reform Act, Pub. L. No. 115-397, 132 Stat. 5297, 5301–02 (2018); *see also Tango v. U.S. Capitol Police*, No. 22-cv-1777-RC, 2023 WL 4174321, at *4 (D.D.C. June 26, 2023) (explaining the CAA Reform Act amendments). Therefore, courts in this district continue to treat the CAA's requirement that an employee file an OCWR claim within 180 days of the alleged violation as jurisdictional.[1] *See Tango*, 2023 WL 4174321, at *4; *Stallans v. Architect of the Capitol*, No. 23-cv-02621-TSC, 2024 WL 1740115, at *2 (D.D.C. Apr. 23, 2024); *Mahmoud v. Lib. of Congress*, No. 20-cv-1935-JEB, 2021 WL 6808293, at *2 (D.D.C. Feb. 9, 2021); *cf. Ross v. U.S. Capitol Police*, 195 F. Supp. 3d 180, 198 (D.D.C. 2016). A plaintiff must "prov[e] by a preponderance of the evidence that these prerequisites are satisfied." *Ross*, 195 F. Supp. 3d at 195–96 (citing *Landmark Health Sols., L.L.C. v. Not for Profit Hosp. Corp.*, 950 F. Supp. 2d 130, 132–33 (D.D.C. 2013)). USCP argues that the

---

[1] It is unclear whether the D.C. Circuit would reach the same conclusion today. The Supreme Court has held that claim-processing rules, which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times[,]" are not jurisdictional. *Santos-Zacaria v. Garland*, 598 U.S. ---, ---, 143 S. Ct. 1103, 1112 (2023) (citation omitted); *see, e.g.*, *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 19–21 (2017); *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006). And, just last term, the Supreme Court held that an administrative exhaustion provision was "a quintessential claim-processing rule," noting it had "yet to hold that any statutory exhaustion requirement is jurisdictional." *Santos-Zacaria*, 143 S. Ct. at 1112–13. The D.C. Circuit has not revisited *Blackmon-Malloy*, however. *Cf. Halcomb v. Off. of Senate Sergeant-at-Arms*, 368 F. App'x 150, 150 (D.C. Cir. 2010) (reiterating that the CAA "exhaustion requirement is jurisdictional"); *Turner v. U.S. Capitol Police*, 653 F. App'x 1, 2 (D.C. Cir. 2016). Because "district judges . . . are obligated to follow controlling circuit precedent until either [the Circuit], sitting en banc, or the Supreme Court, overrule it," *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997), the court will apply *Blackmon-Malloy* and treat the CAA's exhaustion requirements as jurisdictional.

court lacks subject matter jurisdiction over Vasquez's claims raising discriminatory acts prior to February 5, 2023, because she failed to timely file an OCWR claim raising those allegations. Def.'s MTD at 1, 8–11.

    i.    <u>Hostile Work Environment</u>

An OCWR complaint alleging a hostile work environment is timely filed under the CAA "so long as one of the acts contributing to the hostile work environment occurred within the 180-day filing period" and such acts "are adequately linked [to the] [] hostile work environment claim." *See Turner v. U.S. Capitol Police Bd.*, 983 F. Supp. 2d 98, 109 (D.D.C. 2013); *Bing v. Architect of the Capitol*, 300 F. Supp. 3d 53, 60 (D.D.C. 2017) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120–21 (2002)). Hostile work environment claims do not rest on a single act of harassment that occurred on a particular day. *Morgan*, 536 U.S. at 115. Rather, a collection of "separate acts" taken together may "constitute one 'unlawful employment practice.'" *Id.* at 117 (internal citations omitted). It is the cumulative effect of individual acts that form a hostile work environment claim. *Id.* Plaintiffs may raise timely and untimely allegations to substantiate a hostile work environment claim if the allegations involve "the same type of employment actions, occur[] relatively frequently, and were perpetrated by the same managers." *Id.* at 120. Therefore, so long as a plaintiff submitted an OCWR complaint within 180 days of "one of the acts contributing to the hostile work environment," the CAA's exhaustion requirements are satisfied for any allegations forming part of that same hostile work environment claim. *See Turner*, 983 F. Supp. 2d at 109.

Vasquez filed her OCWR claim on August 3, 2023, alleging that she was subjected to a hostile work environment starting in December 2022 and persisting until her dismissal on February 8, 2023. Def.'s MTD Ex. 4 at 5, 10–13; *see also* Compl. ¶¶ 23–24. Vasquez's OCWR claim

identifies contributing acts on February 6, 2023, when Salen and Arena interrogated her and forced her to confess to cheating, and February 8, 2023, when USCP dismissed her. Def.'s MTD Ex. 4 at 12–13. Vasquez timely filed the OCWR claim within 178 and 176 days of those acts, *id.* at 9, 12–13, thereby satisfying the CAA's jurisdictional exhaustion requirements for those allegations, *see Turner*, 983 F. Supp. 2d at 109. If the allegations predating the 180-day statutory time period are "adequately linked" to the timely raised acts, *id.*, "the entire time period of the hostile environment may be considered" by the court, *Morgan*, 536 U.S. at 117. Here, the court has no trouble finding Vasquez's allegations adequately linked. She alleges a series of separate acts "perpetrated by the same managers"—Salen and Arena—that "occurred relatively frequently" over less than three months and involved "the same type of employment actions"—interrogations regarding cheating and different treatment during educational exercises. *See id*. at 120 (citation omitted); Compl. ¶¶ 10, 16, 23, 32. Because at least one "act contributing to the claim occurs within the [180-day] period" and all the allegations "are part of this single claim," the court may consider all the conduct, "including those acts that occur outside the filing period." *Morgan*, 536 U.S. at 117-18; *Turner*, 983 F. Supp. 2d at 109–11 (applying *Morgan* to CAA claims). Therefore, the court will deny USCP's motion to dismiss Vasquez's hostile work environment claim for lack of subject matter jurisdiction and will separately address whether, taken together, Vasquez's allegations plausibly state a hostile work environment.

    ii.    <u>Disparate Treatment</u>

Unlike a hostile work environment claim, to satisfy the CAA's exhaustion requirements for a disparate treatment claim, a plaintiff must submit a complaint to OCWR within 180 days of the specific, alleged violation. *Mahmoud*, 2021 WL 6808293, at *2 (claims based on discrete acts "must be separately exhausted" under the CAA"). Disparate treatment claims arise from discrete

acts of discrimination, which occur when the discriminatory act happened. *Morgan*, 536 U.S. at 110. Vasquez timely filed an administrative claim regarding the February 6, 2023 incident and her February 8, 2024 dismissal because those discrete acts occurred within 180 days of August 3, 2023, the day she filed her OCWR claim. Def.'s Ex. 4 at 9, 12–13. The court lacks subject matter jurisdiction to consider her disparate treatment claims based on acts outside that time period. *See Ross*, 195 F. Supp. 3d at 199. Vasquez contends that she timely filed administrative claims for all alleged discriminatory acts by filing an OPR complaint on February 8, 2023. Opp'n at 1; *see generally*, Opp'n Ex. A at 1–9, ECF No. 14-1. But filing an OPR complaint "is not a proceeding under the CAA." *Brady v. U.S. Capitol Police*, 200 F. Supp 3d 208, 216 (D.D.C 2016). Rather, it is OCWR, not OPR, that receives and responds to CAA employment claims. 2 U.S.C. §§ 1301(a)(12) (Definitions), 1402(a)(1). Vasquez alleges that after filing her OPR complaint "with Defendant in February 2023," she was "represented by counsel, engaged efforts to resolve the complaint over a period of several months, and even attended in-person mediation." Opp'n at 9. Even accepting these allegations as true, however, an OPR proceeding does not relieve Vasquez of the CAA's exhaustion requirements. *See Tango*, 2023 WL 4174321, at *6 (finding allegation not raised in OCWR claim within 180-days untimely, despite OPR complaint and investigation within 180 days); *cf. Foster v. Gonzales*, 516 F. Supp. 2d 17, 23–24 (D.D.C. 2007) (refusing to toll Title VII administrative exhaustion requirements based on non-EEO internal appeal procedures). Because Vasquez failed to timely file an OCWR administrative claim for allegations occurring prior to February 5, 2023, the court will grant in part USCP's motion to dismiss Count II for lack of subject matter jurisdiction.

C. **Failure to State Claim**

    i.    Hostile Work Environment

To state a hostile work environment claim, a plaintiff must allege that "[her] employer subjected [her] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Jackson v. Gallaudet Univ.*, 169 F. Supp. 3d 1, 4 (D.D.C. 2016) (citing *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)). Relevant factors for severity and pervasiveness include "the frequency of the discriminatory conduct; . . . whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). A plaintiff must allege that the conduct "was not merely tinged with offensive [] connotations, but actually constituted discrimination because of the employee's protected status." *Turner*, 983 F. Supp. 2d at 109 (citing *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 188–89 (D.D.C. 2012)). And the alleged conduct must be so "extreme to amount to a change in the terms and conditions of employment." *Jackson*, 169 F. Supp. 3d at 5 (citing *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005)).

USCP claims that Vasquez's Complaint "lacks factual allegations indicating extreme or abusive conduct so severe or pervasive that it led to a change in her working conditions." Def.'s MTD at 11. The court agrees. The Complaint's factual allegations do not rise to the level of severity and persuasiveness to alter her working conditions. Vasquez claims that Salen acted in an "intimidating manner," stared at her during a training activity, reprimanded her for talking in the hallway, and treated her with indifference. Compl. ¶¶ 14, 15, 23. Those allegations reflect at most a "'nasty' attitude by a supervisor," which does not satisfy the severe or pervasive standard. *Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 849 (D.C. Cir. 2001) (citing *Phillips v. Taco*

*Bell Corp.*, 156 F.3d 884, 890 (8th Cir. 1998)); *see also Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015) (affirming dismissal of hostile work environment based on "occasional name-calling, rude emails, lost tempers and workplace disagreements"); *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 56–57 (D.D.C. 2004) (holding that being treated differently, "spoken to in a condescending manner, although [] disrespectful and unfair," did not give rise to "an illegal hostile work environment."). Vasquez's conclusory statements regarding the mental and emotional impact of Salen's conduct cannot save her claim. Compl. ¶¶ 9–11, 15, 25. Allegations that a plaintiff "suffered mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience" are insufficient to establish the extreme conduct required for a hostile work environment claim. *Walden v. Patient-Centered Outcomes Rsch. Inst.*, 177 F. Supp. 3d 336, 345 (D.D.C. 2016).

Finally, Vasquez's discrete discriminatory act allegations fail to sufficiently support her hostile work environment claim. "[A]s a general matter, courts in this Circuit frown on plaintiffs who attempt to bootstrap their alleged discrete acts [] into a broader hostile work environment claim." *Id.* at 344–345 (citing *Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d. 141, 164 (D.D.C. 2013)). Vasquez's interrogations on January 13, 2023 and February 6, 2023 were isolated incidents that "can hardly be characterized as 'pervasive.'" *Akosile v. Armed Forces Ret. Home*, 938 F. Supp. 2d 76, 87 (D.D.C. 2013). Courts have held that "[n]egative interactions with supervisors, even when a supervisor yells and uses profanity, generally do not meet th[e] standard" for extreme and pervasive conduct. *Id.* at 87; *see, e.g.*, *Lanier v. Stackley*, 253 F. Supp. 3d 75, 78 (D.D.C. 2017) (allegations that employee was interrogated about stealing money and accused of making excuses failed to state hostile work environment claim); *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 103–04 (D.D.C. 2010) (allegations of multiple disciplinary actions,

threats to replace employee, and placement on administrative leave were "insufficiently severe and pervasive"); *Brooks v. Grundmann*, 748 F.3d 1273, 1275, 1277 (D.C. Cir. 2014) ("[Y]elling at [Plaintiff] in front of co-workers, insulting and demeaning her," and "selective scrutiny" from a supervisor were "more like the ordinary tribulations of the workplace . . . not actionable under Title VII"). Vasquez relies heavily on *Kennedy v. Berkel & Co. Contractors*, 319 F. Supp 236 (D.D.C 2018), Opp'n at 11–12, but that case only highlights the absence of severe and pervasive conduct here. In *Kennedy*, the defendant's severe and pervasive conduct included "rub[ing] his body against" plaintiff every day and exposing his private parts to plaintiff, among other various explicit encounters. 319 F. Supp at 242. Vasquez presents no comparable allegations of physical or mental abuse. Therefore, she fails to plead conduct of sufficient severity or pervasiveness to state a plausible hostile work environment claim and the court will grant USCP's motion to dismiss Count I.

  ii.  <u>Disparate Treatment</u>

To state a disparate treatment claim, a plaintiff must allege that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the adverse action gives rise to an inference of discrimination." *Ruppe v. Blinken*, 743 F. Supp. 3d 1, 20 (D.D.C. 2024) (citing *George*, 407 F.3d at 412). The parties agree that Vasquez is a member of a protected class, *see generally* Def.'s MTD at 14; Compl ¶¶ 23, 24, 32, but dispute whether she sufficiently alleged the second and third elements of a discrimination claim.

Based on her dismissal from the Academy, Compl. ¶ 18, Vasquez sufficiently alleges an adverse employment action, which includes "a significant change in employment status, such as [], firing . . ." *Omwenga v. United Nations Found.*, 244 F. Supp. 3d 214, 222 (D.D.C. 2017) (citing *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)) (internal quotations omitted). USCP's

only argument to the contrary is its unsupported statement that Vasquez fails to allege that "Salen's or Arena's allegedly discriminatory acts brought about some disadvantageous change in [her] employment terms or conditions." Def.'s MTD at 15. The court disagrees. Vasquez plainly alleges that Salen and Arena used her "coerced statement as evidence to falsely justify [her] termination." Compl. ¶ 18. Her dismissal qualifies as an adverse employment action. *See, e.g.*, *Samuel v. Metro. Police Dep't*, 258 F. Supp 3d. 27, 42 (D.D.C. 2017) (citing *Jones v. Castro*, 168 F. Supp 3d. 169, 178 (D.D.C. 2016)).

Vasquez's Complaint also contains adequate facts to support an inference of discrimination, which occurs when the employer acted because of the employee's protected class. *Redmon v. YMCA of Metro. Wash.*, 417 F. Supp. 3d 99, 102 (D.D.C. 2019) (citing *George*, 407 F.3d at 412). A plaintiff can raise an inference of discrimination by alleging that "she was treated differently from similarly situated employees who are not part of the protected class" or that the employer's justification for the adverse action is merely pretext for discrimination. *George*, 407 F.3d at 412–13; *see also Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2015). "To raise an inference of discrimination based on comparator evidence, the plaintiff must demonstrate: (1) that 'all of the relevant aspects of [her] employment situation were nearly identical to those of the [other] employee'; and (2) that the comparator was 'charged with offenses of comparable seriousness' but treated more favorably." *Townsend v. United States*, 236 F. Supp 3d 280, 307 (D.D.C. 2017) (quoting *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015)). "Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's job and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses." *Burley*, 801 F.3d at 301. For pretextual termination, a plaintiff may support her claim by alleging the "two

analogous common legitimate reasons for discharge: performance below the employer's legitimate expectations or the elimination of the plaintiff's position altogether" are inapplicable. *George*, 407 F.3d at 412; *see also Ho v. Garland*, 106 F.4th 47, 54 (D.C. Cir. 2024). "A 'complaint survives a motion to dismiss' when 'there are two alternative explanations, one advanced by the defendant, and the other advanced by the plaintiff, both of which are plausible.'" *Ho*, 106 F.4th at 54 (quoting *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021)).

Vasquez alleges that USCP fabricated misconduct and cheating allegations to "falsely justify" her termination. Compl. ¶¶ 18, 24, 33. She claims that Salen and Arena forced her to confess "that she received 'subconscious information'" from other students "related to a training scenario." *Id.* ¶ 32. Although Salen and Arena "questioned" Vasquez's White classmates regarding the alleged cheating incident, they "did not accuse any of the White recruits of cheating." *Id.* ¶¶ 12, 32. Vasquez "adamantly protested" that she did not rely on "subconscious information," but Salen and Arena required her to write a statement "according to [their] specific instructions." *Id.* ¶¶ 16–17. Salen and Arena then used "the coerced statement as evidence to falsely justify Plaintiff Vasquez's termination." *Id.* ¶ 33. Construing these allegations liberally, *Ho*, 106 F.4th at 54, Vasquez's Complaint survives USCP's motion to dismiss. Here, appropriate comparators would include similarly situated employees outside Vasquez's protected class who engaged in offenses of comparable seriousness and were not terminated. *See Burley*, 801 F.3d at 301 (quoting *Holbrook v. Reno*, 196 F.3d. 255, 261 (D.C. Cir. 1999)). Based on Salen and Arena's accusations, the alleged cheating involved other students. *See, e.g.*, Compl. ¶ 16 (quoting Arena saying "It is only fair to say that other students would confide in you since you and the officers were once in the same class."). But Salen and Arena did not accuse the White recruits of cheating, nor did they require them to write confession statements. *See Winston v. Clough*, 712 F. Supp. 2d 1, 12 (D.D.C.

2010) (Plaintiff stated a claim for discrimination by alleging "other co-workers outside of [Plaintiff's] protected class used their cell phones more than [he] did, yet none was suspended or disciplined[.]"). Vasquez also raises pretext allegations, claiming that USCP "fabricated grounds" to terminate her by forcing her to confess "under duress . . .according to Lt. Arena and Instructor Salen's specific instructions." Compl. ¶¶ 17, 24. Accepting Vasquez's allegations as true, her discrimination claim "nudge[s] . . . across the line from conceivable to plausible." *Ho*, 106 F.4th at 55 (quoting *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015)). Accordingly, at this stage, Vasquez sufficiently states a claim for disparate treatment and the court will deny USCP's motion to dismiss Count II.

### IV. CONCLUSION

For the reasons explained above, the court will GRANT in part and DENY in part Defendant's Motion to Dismiss.

Date: March 31, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge